PHILLIP A. TALBERT
United States Attorney
ROSANNE L. RUST
MICHAEL D. ANDERSON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00219 WBS |
|---|---|
| Plaintiff, | **UNITED STATES' FORMAL OBJECTIONS TO THE FINAL PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM** |
| v. | |
| ASHLEY AURICH, | DATE: December 12, 2022<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |
| Defendant. | |

The United States hereby submits its formal objections to the final Presentence Investigation Report (PSR), ECF No. 36, and its sentencing recommendation for defendant Ashley Aurich. For the reasons stated below, the Court should adopt the United States' applicable Sentencing Guidelines' calculations, which are slightly higher than those in the PSR. Based on that higher calculation and the analysis provided in the government's separate submission, the Court should then sentence the defendant to 17 months in prison and order her to pay a low-end Guidelines fine of $7,500.

### I. THE PSR INCORRECTLY CALCULATES THE GUIDELINES BUT OTHERWISE SHOULD BE ADOPTED.

The Probation Officer in the PSR has calculated a total offense level of 14 and a criminal history category of I, for an advisory sentencing range of 15 to 21 months' imprisonment. *See* PSR ¶ 61. These calculations are based on the base offense level of 14; a 7-level increase due to a substantial risk or

permanent or life-threatening bodily injury to the victim inmate; a 6-level decrease for the defendant being an accessory after the fact; a 2-level increase because the victim inmate was handcuffed, and thus, physically restrained; and a 3-level reduction for acceptance of responsibility. *See* PSR ¶¶ 23-34.

The United States respectfully objects to these calculations. As noted in its informal objections to the draft PSR, ECF No. 36-1, the United States believes that the applicable Guidelines should be amended to reflect those calculated below.

As an initial matter, both Probation and the United States do agree that based on Aurich's count of conviction for a violation of 18 U.S.C. § 1519, U.S.S.G. § 2J1.2 is the correct Guideline to start with. PSR ¶ 23. Under U.S.S.G. § 2J1.2, the base offense level is 14. If, however, the offense involved obstructing the investigation or prosecution of a criminal offense, U.S.S.G. § 2J1.2(c)(1) cross references to U.S.S.G. § 2X3.1 (Accessory After the Fact) if that would result in a greater offense level. Probation and the United States agree that the offense did involve obstruction and that a greater offense level would result under U.S.S.G. § 2X3.1, but for different reasons.

As discussed in its informal objections, this case entailed obstructing the investigation of an assault on a prisoner by a prison guard. Although most assaults are not federal criminal offenses, certain types of assaults, like the one at issue in this case, give rise to federal jurisdiction. This is reflected in the stipulated facts found in the factual basis to Aurich's plea agreement. As noted in that filing, Aurich admitted that her criminal conduct was meant to impede the federal government's investigation regarding "the unlawful use of force" against an inmate. ECF No. 16 at 13, lines 7-9. That type of force or assault by a prison guard on an inmate is an assault that is federally prosecutable because it is a civil rights violation, in other words, a deprivation of the inmate's individual rights under a color of law theory pursuant to 18 U.S.C. § 242. Therefore, the obstructive conduct was in relation to a federal civil rights investigation.[1]

---

[1] Aurich was also aware that her conduct could obstruct a federal civil rights investigation because she had been trained at the CDCR Academy where a portion of the instruction dealt with this possibility. Moreover, as she admitted in her factual basis to plea, she witnessed the assault, knew that it took place in a prison, and knew that it was an assault by a prison guard (Pacheco) on an inmate. Therefore, she knew that she obstructed a potential civil rights investigation by submitting a false report to try to cover up Pacheco's unlawful use of force.

USA FORMAL OBJECTIONS AND SENTENCING MEMORANDUM

2

Turning back to U.S.S.G. § 2X3.1(a)(1), under that provision, the base offense level is six levels lower than the offense level for the underlying offense. According to the Application Notes, the "'underlying offense' means the offense as to which the defendant is convicted of being an accessory." U.S.S.G. § 2X3.1, App. n.1. As discussed above, the offense to which Aurich was an accessory is 18 U.S.C. § 242. Further, the application note indicates that "the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant" should be applied. U.S.S.G. § 2X3.1, App. n.1.

Appendix A of the Guidelines directs violations of 18 U.S.C. § 242 to U.S.S.G. § 2H1.1. Under U.S.S.G. § 2H1.1(a)(1), the *base offense level* is the *offense level* from any underlying offense. The underlying offense can be derived from "any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law." U.S.S.G. § 2H1.1, App. n. 1. Here, that is aggravated assault.

U.S.S.G. § 2A2.2 governs aggravated assault. Under this Guideline, the base offense level is 14. There are five levels added for serious bodily injury.[2] The offense level under this Guideline, therefore, adds up to 19.

As discussed above, the offense level of 19 then becomes the base offense level pursuant to U.S.S.G. § 2H1.1(a)(1). After the base offense level is determined under U.S.S.G. § 2H1.1, Application Note 1 to that Guideline states to "apply subsection (b) to the alternative base offense level" if doing so is "appropriate." Here, under U.S.S.G. § 2H1.1(b)(1), six levels are correctly added to the base offense level because it was committed under color of law. The offense level then becomes 25.

Now, because Aurich did not commit the underlying offense herself but rather obstructed its investigation, the Guidelines analysis requires a return to U.S.S.G. § 2X3.1. Under U.S.S.G. § 2X3.1(a)(1), six levels are subtracted from the offense level calculated for the underlying offense. This results in an offense level of 19 and concludes the Chapter 2 calculations.

As for Chapter 3 adjustments, the United States does agree with Probation that Aurich should

---

[2] Probation applies 7 levels for this specific offense characteristic under its analysis, but the parties estimated in the plea agreement from 2020 that this enhancement would result in a 5-level increase. In its calculations, the government has given Aurich the benefit of that earlier assessment although it is only an estimate.

receive full credit for acceptance of responsibility under U.S.S.G. § 3E1.1. Under these calculations, Aurich's total adjusted offense level would be 16 and because her criminal history category is I, the resulting sentencing range would be 21 to 27 months imprisonment.

If the Court agrees with the United States calculations, PSR Paragraphs 23-34, 61, and 74-75 should be revised.

Aside from the Guidelines calculations detailed above, the United States has no formal objections to the final PSR, and therefore, requests that the Court adopt the PSR's material statements of fact.

## II. A SIGNIFICANT CUSTODIAL SENTENCE AND A LOW-END GUIDELINES FINE ARE WARRANTED IN THIS CASE.

The sufficient but not greater than necessary sentence to achieve the objectives set forth in the sentencing factors listed in 18 U.S.C. § 3553(a) is a low-end Guidelines sentence further reduced pursuant to the departure submitted separately to the Court, *i.e.*, a 17-month prison term, and a low-end Guidelines fine of $7,500.

As detailed in the PSR, the nature and circumstances of the offense are serious. At all relevant times, Aurich was a trained CDCR correctional officer assigned to work at CSP-Sacramento. In that role, on September 15, 2016, she witnessed her partner brutally assault an elderly inmate for no apparent reason. Rather than report her partner's unprovoked attack as she was required to, Aurich chose to help him cover it up instead. Such conduct must be punished to ensure the proper administration of justice. Otherwise, crimes in prison facilities will continue to be committed and go undetected.

There is no doubt that lying on an official CDCR report, as Aurich did, to impede an investigation into a possible civil rights violation is grave conduct that must be deterred. As previously discussed with the Court in *United States v. Arturo Pacheco*, 2:20-cr-221 WBS, this is particularly true where, as here, there exists a systemic problem of purposefully failing to report misconduct pursuant to a "code of silence." *Pacheco*, ECF No. 42 at 14, lines 5 to 8. For the justice system to correctly operate, law enforcement must execute their jobs within legal bounds and with integrity.

The low-end Guidelines fine recommended by Probation is also an appropriate part of the just punishment in this case. Sentencing Guideline section 5E1.2 provides that the "court shall impose a fine

USA FORMAL OBJECTIONS AND SENTENCING MEMORANDUM

4

in all cases, except where the defendant establishes that she is unable to pay and is not likely to become able to pay any fine." Here, Aurich has made no such showing. PSR ¶ 57-58. Instead, the information she provided to Probation demonstrates her ability to afford paying a fine, especially at the low-end of the Guidelines. *See* PSR ¶ 59. In determining the fine amount, section 5E1.2(d) also lists several factors the "court shall consider". Those factors weigh in favor of imposing a low-end Guidelines' fine amount of $7,500. That fine will reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence to hopefully ensure Aurich does not commit any future crimes; Aurich has the ability to pay that fine amount; no restitution has been requested in this case; Aurich has not been ordered to previously pay a fine; and there are expected costs to the government associated with her sentence (PSR ¶ 69). Given such facts, the Court should impose the recommended $7,500 fine.

### III. THE UNITED STATES DOES NOT CURRENTLY OPPOSE A SELF-SURRENDER DATE IN 2023.

The PSR recommends that Aurich be able to self-surrender although the date for that needs to be revised. *See* PSR at 15. Based on the facts currently known to the United States, it does not oppose that approach, assuming the Court imposes a custodial sentence.

Respectfully submitted,

DATED: December 5, 2022

PHILLIP A. TALBERT
United States Attorney

*/s/ Rosanne L. Rust*
ROSANNE L. RUST
Assistant United States Attorney

For the UNITED STATES OF AMERICA